**BILLY J. WILLIAMS, OSB #90136**
United States Attorney
District of Oregon
**KATHLEEN L. BICKERS, OSB #85151**
kathleen.bickers@usdoj.gov
Assistant United States Attorney
United States Attorney's Office
District of Oregon
1000 S.W. Third Ave., Suite 600
Portland, Oregon 97204-2902
Telephone:    (503) 727-1060
Facsimile:    (503) 727-1117
Attorneys for United States

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# MEDFORD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Civil Case No.: 1:18-cv-1665** |
| Plaintiff, | |
| | **COMPLAINT FOR FORECLOSURE** |
| **v.** | |
| **BRANDON ROY RIDGEWAY AND LAURIE JEAN RIDGEWAY, Husband and Wife,** | |
| Defendants. | |

COMES NOW the United States of America, by Billy J. Williams, United States

Attorney for the District of Oregon and through Kathleen L. Bickers, Assistant United States

Attorney for the District of Oregon for its claim for relief against the above-named Defendants,

alleges as follows:

1.      This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1345, as the United States is Plaintiff.  Venue is proper pursuant to 28 U.S.C. § 1391, as this action is to foreclose a mortgage and security agreements describing real and personal property located in Klamath County, State of Oregon.

2.      On or about April 22, 2015, Defendants Laurie Jean Ridgeway and Brandon Roy Ridgeway, husband and wife ("Defendants Ridgeway") executed and delivered to the United States of America, acting through its agency, Farm Service Agency ("FSA"), an agency of the United States Department of Agriculture ("USDA"), a promissory note in the amount of $48,500.00.  A copy of this note is attached as Exhibit A.

3.      On or about April 22, 2015, for the purpose of securing payment of the promissory note described in paragraph 2, Defendant Brandon Roy Ridgeway executed and delivered to FSA a real estate mortgage for Oregon describing certain real property owned by him.  A copy of this mortgage is attached as Exhibit B.  On May 4, 2015, this mortgage was recorded, as Instrument No. 2015-004255, in the official records of Klamath County, Oregon.

4.      On or about April 22, 2015, and February 16, 2017, Defendants Ridgeway signed security agreements describing personal property, including but not limited to livestock and farm equipment, further securing the payment of the promissory note described in paragraph 2. Copies of these security agreements are attached as Exhibits C and D.  The security interests created by these security agreements were perfected by FSA filing a financing statement April 21, 2015, as Instrument No. 90427131; and an EFS-1 filed April 21, 2015, as Instrument No. 90427275, in the official records of the Oregon Secretary of State.  Copies of the financing statements are attached as Exhibits E and F.

5.      FSA has a perfected security interest in the following described personal property, including livestock and farm equipment, owned by Defendants Ridgeway located in Klamath County, State of Oregon:

| | |
|---|---|
| 1 | Dairy Bull |
| 9 | Dairy cows |
| 37 | Dairy Goats |
| 3 | Poultry Layer Chickens |
| 1 | Windrower, IH 5000, S/N 1310059000700 |
| 1 | Baler, Freeman 200T, 1976 S/N 202058 |
| 1 | Lawn Tractor, New Holland M219H, 2033 S/N T042D0080 |
| 1 | Tractor, Kioti DK55 Cab 55hp 2wd, 2016 S/N 16480001 |
| 1 | Loader, Kioti 1595, S/N 0257716 |
| 1 | 40′ Container, 40′ Insulated |
| 1 | Compressor, 1hp |
| 1 | Hoophouse, Aquaponic 2016 |
| 1 | Rake, New Holland 14′ |

6.      On August 16, 2018, marijuana was growing on the real property described in the mortgage alleged in paragraph 3.

7.      Defendants Ridgeway are delinquent in the payment of their indebtedness to FSA. On March 2, 2017, FSA accelerated the maturity of the entire indebtedness owing under the terms of the promissory notes, mortgages and security agreements, and declared all amounts due in accordance with the provisions of the promissory notes, mortgages, and security agreements described above, and after taking all actions required pursuant to applicable regulations. Defendants Ridgeway are indebted to FSA in the amount of $56,199.49 comprised of $53,296.00 principal, and $2,903.49 interest computed through October 19, 2017, and interest accruing thereafter at the daily rate of $3.4679.

8.      The interests of all Defendants are inferior to the interests of FSA.

WHEREFORE, Plaintiff United States of America requests judgment against Defendants Ridgeway as follows:

1.      Against Defendants Brandon Roy Ridgeway and Laurie Jean Ridgeway, husband and wife, in the amount of $56,199.49 ($53,296.00 principal and $2,903.49 interest) and interest to accrue at the rate of $3.4679 per day from October 19, 2017, to the date of judgment, together with interest from the date of judgment at the legal rate until paid in full, for costs of suit, and other proper relief.

2.      Directing that the mortgage and security agreements be foreclosed and the real and personal property described in those instruments be sold by the United States Marshal for the District of Oregon in the manner provided by law; that the parties hereto be allowed to bid at the said foreclosure sale; that the purchaser at said sale shall be issued a Certificate of Sale of Real Property, be immediately let into possession of said property, and be entitled to such remedies as are available at law to secure possession, including a writ of assistance, if Defendants Ridgeway, or any of them, or any other party or person shall refuse to surrender possession to the purchaser immediately on the purchaser's demand for possession; and that at the termination of the redemption period the Marshal issue his Deed; and that the United States Marshal shall, after sale of the personal property, execute and deliver to that purchaser a bill of sale to said personal property.

3.      That the proceeds realized from the sale of the real and personal property, including livestock and farm equipment, be applied as follows:  first, in payment of attorneys' fees, costs, and expenses of this suit; and second, in payment of the United States' judgment.

4.      Decreeing that Defendants Ridgeway and all persons claiming by, through or under them be forever barred and foreclosed from asserting any right, title, or interest in and to the said mortgaged property, except the right of redemption provided by law.

5.    For such other and further relief as the Court may deem fit and proper.

DATED this 14th day of September, 2018.

BILLY J. WILLIAMS
United States Attorney
District of Oregon


*/s Kathleen L. Bickers*_____
KATHLEEN L. BICKERS
Assistant United States Attorney
Attorneys for Plaintiff

This form is available electronically.

*Form Approved - OMB No. 0560-0237*
*(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)*

**FSA-2026**
(12-05-12)

**U.S. DEPARTMENT OF AGRICULTURE**
Farm Service Agency

Position 2

## PROMISSORY NOTE

| 1. Name<br>RIDGEWAY, Laurie Jean and Brandon Roy | | 2. State<br>Oregon | 3. County<br>Klamath |
|---|---|---|---|
| 4. Case Number<br>43-018-551494178 | 5. Fund Code<br>44 | 6. Loan Number<br>01 | 7. Date<br>04/22/2015 |

| 8. TYPE OF ASSISTANCE<br>670 = OL-BF-Reg-7yr-SDA-Micro | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

☒ Initial loan  ☐ Conservation easement  ☐ Deferred payments

☐ Consolidation  ☐ Rescheduling  ☐ Debt write down

☐ Subsequent loan  ☐ Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)* Klamath Falls, Oregon or at such other place as the Government may later designate in writing, the principal sum of *(b)* FORTY-EIGHT THOUSAND FIVE HUNDRED AND 00/100 dollars *(c)* ($ 48,500.00 , plus interest on the unpaid principal balance at the **RATE** of *(d)* TWO AND THREE-EIGHTS percent *(e)* 2.375 %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)* 4 installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 16,942.00 | 12/31/2015 | $ 16,942.00 | 12/31/2016 |
| $ 16,942.00 | 12/31/2017 | $ ALL DUE | 04/22/2018 |
| $ N/A | | $ N/A | |
| $ N/A | | $ N/A | |

and *(d)* $ 16,942.00 thereafter on the *(e)* DECEMBER 31ST of each *(f)* YEAR until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)* 3 years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Initial _BR_    Date _4-22-15_

FSA-2026 (12-05-12)                                                                                               Page 2 of 3

13.  Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14.  Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15.  Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower.  Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16.  Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17.  If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a)<br>FUND CODE/<br>LOAN NO. | (b)<br>FACE AMOUNT | (c)<br>INTEREST RATE | (d)<br>DATE<br>(MM-DD-YYYY) | (e)<br>ORIGINAL BORROWER | (f)<br>LAST INSTALL.<br>DUE<br>(MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18.  Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19.  If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _JX ffr._   Date _4-22-15_

20.  The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21.  Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22.  This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8.  This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23.  Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

_____          4-22-15
LAURIE JEAN RIDGEWAY, BORROWER            DATE

_____          4-22-15
BRANDON ROY RIDGEWAY, BORROWER            DATE

8314 HWY 140 EAST
KLAMATH FALLS, OR  97603

NOTE:    The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended).  The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.).  The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower.  Providing the requested information is voluntary.  However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees.  The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0237.  The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

**2015-004255**
Klamath County, Oregon



0016878720150004255007 0074

05/04/2015 03:43:53 PM                    Fee: $72.00

**Position 5**

**FSA-2029M-OR**
(10-08-08)

**UNITED STATES DEPARTMENT OF AGRICULTURE**
Farm Service Agency

# MORTGAGE FOR OREGON

After recording, return this document to:

USDA/Farm Service Agency
2316 S 6th Street
Suite C
Klamath Falls, OR  97601



This Space Reserved for County Filing Officer Use Only

Form Approved - OMB No. 0560-0237
*(See Page 7 for Privacy Act and Public Burden Statements.)*

THIS MORTGAGE ("instrument") is made on ___April 22___, 20 _15_. The mortgagor is BRANDON ROY RIDGEWAY

("Borrower") whose mailing address is _8314 HWY 140 EAST, KLAMATH FALLS, OR_
_97603_. This instrument is given to the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government") located at _2316 S 6TH STREET,_
_SUITE C, KLAMATH FALLS, OR  97601_.

This instrument secures the following promissory notes, assumption agreements, and/or shared appreciation agreements (collectively called "note"), which have been executed or assumed by Borrower unless otherwise noted, are payable to the Government, and authorize acceleration of the entire debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 04/22/2015 | $48,500.00 | 2.375 | 04/22/2018 |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be increased as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all of the proceeds of the loan or loans evidenced by the above note.

This instrument secures to the Government:  (1) payment of the note and all extensions, renewals, and modifications thereof; (2) recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S.C. § 2001;  (3) payment of all advances and expenditures, with interest, made by the Government; and  (4) the obligations and covenants of Borrower set forth in this instrument, the note, and any other loan agreements.

In consideration of any loan made by the Government under the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921 et. seq. as evidenced by the note,  Borrower irrevocably mortgages,  grants and conveys to Government the following described property situated in the State of Oregon, County or Counties of ___KLAMATH___:

SEE ATTACHED EXHIBIT "A" LEAGAL DESCRIPTION

Initial _____ Date _4-22-15_

FSA-2029M-OR (10-08-08) Page 1 of 7

Continuation and becomes a part of FSA-2029M-OR, "Mortgage for Oregon", Ridgeway, Brandon Roy

EXHIBIT "A"
LEGAL DESCRIPTION

Lots 7, 8 and 9 of JUNCTION ACRES, according to the official plat thereof on file in the office of the County Clerk of Klamath County, Oregon.  EXCEPTING THEREFROM, a portion of Lot 9, JUNCTION ACRES, a recorded subdivision of Klamath County, Oregon, described as:

Beginning at a point which lies South 71 degrees 21' East along the Southerly right of way of the Klamath Falls-Lakeview Highway ninety (90) feet from the Northwest corner of Lot 9, JUNCTION ACRES, which is the point of beginning, and running thence Northwesterly ninety (90) feet to the Northwest corner of said Lot 9;  thence Southerly along the West line of said Lot 9 one-hundred sixth-eight (168) feet; thence Easterly at right angles to said West line one hundred thirty three (133) feet to a point;  thence Northwesterly to the point of beginning.

ALSO EXCEPTING THEREFROM, a portion of Lot 9, JUNCTION ACRES, a recorded subdivision of Klamath County, Oregon, described as:

Beginning at the Northeast corner of a parcel of land described in Volume M95, page 3874, Microfilm Records of Klamath County; thence South 71°21' East along the Southerly right of way line of the Klamath Falls-Lakeview Highway, 50.54 feet; thence Southerly 122.94 feet more or less to the Southeast corner of said parcel; thence Northwesterly on the East line of said parcel, 147.08 feet more or less to the point of beginning.

**(For Additional Legal Description, See Exhibit "A" Attached)**

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto (including, but not limited to, irrigations systems, including pumps, motors, electrical panels, pipe, sprinklers, and other accessories pertaining thereto; seed cleaning and storage systems, including cleaners, elevators, pipe, scales, baggers, fans, motors, electrical panels, and other accessories pertaining thereto; milking, milk handling, and milk storage systems, and other accessories pertaining thereto; manure handling systems; livestock feeding systems; whether or not attached to the real estate), the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, water certificates, water permits, water allotments, and water stock pertaining thereto no matter how evidenced, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property").  This instrument constitutes a security agreement and financing statement under the Uniform  Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions, that are now or hereafter included in, affixed, or attached to "the property."

Borrower COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

UNIFORM COVENANTS.  Borrower COVENANTS AND AGREES as follows:

    1.   **Payment.**  Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

    2.   **Fees.**  Borrower shall pay to the Government such fees and other charges that may now or later be required by Government regulations.

    3.   **Application of payments.**  Unless applicable law or Government's regulations provide otherwise all payments received by the Government shall be applied in the following order of priority:   (a) to advances made under this instrument;  (b) to accrued interest due under the note;  (c) to principal due under the note;  (d) to late charges and other fees and charges.

    4.   **Taxes, liens, etc.**  Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

    5.   **Assignment.**  Borrower grants and assigns as additional security all the right, title and interest in:  (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation;  (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and   (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements.  Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full.  Such money may, at the option of the Government, be applied on the debt whether due or not.  The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government.  In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases.  Borrower warrants that as of the date of executing this instrument no default exists under existing leases.  Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law.  Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents.  Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

Initial _____ Date 4-22-15

FSA-2029M-OR (10-08-08) Page 2 of 7

6. **Insurance.** Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government. If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. § 4001 et. seq. and Government regulations. All insurance policies and renewals shall include a standard mortgagee clause.

7. **Advances by Government.** The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements. All such advances shall bear interest at the same rate as the note which has the highest interest rate. All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

8. **Protection of lien.** Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the note. Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property, costs of recording this and other instrument, attorneys' fee, trustees' fees; court costs, and expenses of advertising, selling, and conveying the property.

9. **Authorized purposes.** Borrower shall use the loan evidenced by the note solely for purposes authorized by the Government.

10. **Repair and operation of property.** Borrower shall: (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government; and (d) operate the property in a good and husbandlike manner. Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

11. **Legal compliance.** Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12. **Transfer or encumbrance of property.** Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13. **Inspection.** At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14. **Hazardous substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations. As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15. **Adjustment; release; waiver; forbearance.** In accordance with Government regulations, the Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government - whether once or often - in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

16. **Graduation.** If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17. **Forfeiture.** Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18. **False statement.** Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19. **Cross Collateralization.** Default under this instrument shall constitute default under any other security instrument held by the Government and executed or assumed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20. **Highly erodible land; wetlands.** Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

Initial _RR_ Date _4-22-15_                                                FSA-2029M-OR (10-08-08) Page 3 of 7

21. **Non-discrimination.** If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22. **Notices.** Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23. **Governing law; severability.** This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24. **Successors and assigns; joint and several covenants.** The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the Note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower's interest in the property under this instrument; (b) is not personally obligated to pay the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25. **No merger.** If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

26. **Time is of the essence.** Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.

NON-UNIFORM COVENANTS. Borrower further COVENANTS AND AGREES as follows:

27. **Default; death; incompetence; bankruptcy.** Should default occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the Borrower die or be declared incompetent, or should the Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any debt to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of, and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument and sell the property as prescribed by law; and (e) enforce any and all other rights and remedies provided herein or by present or future law.

28. **State law.** Borrower agrees that the Government will not be bound by any present or future State laws (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

29. **Assignment of leases and rents.** Borrower agrees that the assignment of leases and rents in this instrument is immediately effective on the recording of this instrument. Upon default, the Borrower will receive any rents in trust for the Government, and Borrower will not commingle the rents with any other funds. Any amounts collected shall be applied at the Government's discretion first to costs of managing, protecting and preserving the property, and to any other necessary related expenses. Any remaining amounts shall be applied to reduce the debt evidenced by the note(s). Borrower agrees that the Government may demand that Borrower and Borrower's tenants pay all rents due or to become due directly to the Government if the Borrower defaults and the Government notifies Borrower of the default. Upon such notice, Borrower will endorse and deliver to the Government any payments of rents. If the Borrower becomes subject to a bankruptcy, then Borrower agrees that the Government is entitled to receive relief from the automatic stay in bankruptcy for the purpose of enforcing this assignment.

30. **Application of foreclosure proceeds.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government, and (f) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

Initial _BK_ Date _4-22-15_                                                                                                FSA-2029M-OR (10-08-08) Page 4 of 7

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

For Entities:                                                                    For Individuals:

_____
*(Name of Borrower)*

By: _____ (SEAL)        [signature] (SEAL)
                                                                     BRANDON ROY RIDGEWAY

By: _____ (SEAL)        _____ (SEAL)

By: _____ (SEAL)        _____ (SEAL)

Attest: _____ (SEAL)        _____ (SEAL)

                    [Entity Seal]

## ACKNOWLEDGMENTS

STATE OF OREGON
                                    } ss.        (Individuals)
COUNTY OF    KLAMATH

On this    22nd    day of    APRIL    , 20  15 , before me personally appeared    BRANDON ROY RIDGEWAY
_____
                                    *(Name(s) of persons acknowledging)*
known to me to be the same person whose name is subscribed to the foregoing instrument,  and acknowledged that he, she, or they signed and delivered the instrument as his, her, or their free and voluntary act, for the uses and purposes set forth.

OFFICIAL SEAL
ROWENA A CHASE
NOTARY PUBLIC-OREGON
COMMISSION NO. 476754
MY COMMISSION EXPIRES MARCH 17, 2017

[signature] Rowena A. Chase
                ROWENA A. CHASE
NOTARY PUBLIC of and for the State of Oregon
My Commission expires: 03/17/2017

STATE OF OREGON
                                    } ss.        (Partnership)
COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 20 _____ , by
_____ , Partners,
                                    *(Names of acknowledging partners)*
on behalf of _____ , a (n) _____ Partnership.
                *(Name of partnership)*                        *(State in which partnership created)*

_____
NOTARY PUBLIC of and for the State of Oregon
My Commission expires: _____

*Note:  Page 6 of 7 applies to corporation, limited liability company and trust entities only, and will not be recorded for individuals or partnership entities.*
*Page 7 of 7 contains Privacy Act, Public Burden, and USDA Nondiscrimination Statement portions of this document, and will not be recorded.*

Initial [initials] Date 4-22-15                                        FSA-2029M-OR (10-08-08) Page 5 of 7

| NOTE: | *The following statements are made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a): the Farm Service Agency (FSA) is authorized by the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et seq.), or other Acts, and the regulations promulgated thereunder, to solicit the information requested on its application forms.  The information requested is necessary for FSA to determine eligibility for credit or other financial assistance, service your loan, and conduct statistical analyses.  Supplied information may be furnished to other Department of Agriculture agencies, the Internal Revenue Service, the Department of Justice or other law enforcement agencies, the Department of Defense, the Department of Housing and Urban Development, the Department of Labor, the United States Postal Service, or other Federal, State, or local agencies as required or permitted by law.  In addition, information may be referred to interested parties under the Freedom of Information Act, to financial consultants, advisors, lending institutions, packagers, agents, and private or commercial credit sources, to collection or servicing contractors, to credit reporting agencies, to private attorneys under contract with FSA or the Department of Justice, to business firms in the trade area that buy chattel or crops or sell them for commission, to Members of Congress or Congressional staff members, or to courts or adjudicative bodies.  Disclosure of the information requested is voluntary.  However, failure to disclose certain items of information requested, including Social Security Number or Federal Tax Identification Number, may result in a delay in the processing of an application or its rejection.*<br><br>*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0237.  The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.* |
|---|---|

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program.  (Not all prohibited bases apply to all programs.)  Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, or call (800) 795-3272 (voice) or (202) 720-6382 (TDD).  USDA is an equal opportunity provider and employer.*

*Note:  Page 6 of 7 applies to corporation, limited liability company and trust entities only, and will not be recorded for individuals or partnership entities.*
*Page 7 of 7 contains Privacy Act, Public Burden, and USDA Nondiscrimination Statement portions of this document, and will not be recorded.*

Initial _SR_ Date _4-22-15_                                         FSA-2029M-OR (10-08-08) Page 7 of 7

This form is available electronically.

Form Approved - OMB No. 0560-0238
(See Page 7 for Privacy Act and Paperwork Reduction Act Statements.)

| FSA-2028 (11-12-14) | U.S. DEPARTMENT OF AGRICULTURE Farm Service Agency | Position 1 |
|---|---|---|

### SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT,** *dated (a)* __April 22__ , **2015** , is made between the United States of America acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and (b) **LAURIE RIDGEWAY, BRANDON RIDGEWAY**

(Debtor), whose mailing address is (c) 8314 HWY 140 E, KLAMATH FALLS, OR 97603-9420

FILE COPY

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial _____ Date 4-22-15

FSA-2028 (11-12-14)                                                                                          Page 2 of 7

(b) All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are
planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)*
within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security
Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to
be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and<br>Direction from Named Town or<br>Other Description |
|---|---|---|---|
| 4451 Brandon and Laurie Ridgeway | 12 | KLAMATH, OR | 8314 Highway 140 E., Klamath<br>Falls, OR 97603 |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all
payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas
existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived
from the conveyance or lease and transfer by the Debtor to any subsequent party.

FILE COPY

Initial _____ Date _4-2-18_

FSA-2028 (11-12-14) Page 3 of 7

(c) All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of (1) Oregon

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Windrower | IH | 5000 | Good | | 13100590000700 |
| 2 | 1 | Baler | Freeman | 200T | Fair | 1976 | 202058 |
| 3 | 1 | Lawn Tractor | New Holland | M219H | Good | 2003 | T042D0080 |
| 4 | 1 | Tractor* | Kioti | DK55 Cab 55hp 2wd | Good | | 16480001 |
| 5 | 1 | Loader* | Kioti | 1595 | Good | | 0257716 |
| 6 | 1 | 40' Container * | TBD | 40' Insulated | | | |
| 7 | 1 | 1hp Compressor * | TBA | 1hp | | | |

(10)Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

FILE COPY

Initial _DRR_ Date _4-22-15_

United States v. Ridgeway et al, 1:18-cv-1665    Complaint    Exhibit C, Page 3 of 7

FSA-2028 (11-12-14)                                                  Page 4 of 7

(d) All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*

Oregon

| (2) Line No. | (3) Quantity | (4) Kind-Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 104 | Goats - Goat Kids | Boer X | Mix | 80 | <1 | |
| 2 | 1 | Dairy Cattle-Brdg. - Cows | Holstein | Black/White | | 3+ | |
| 3 | 1 | Goats - Buck | | | | | |
| 4 | 53 | Goats - Does | Boer X | Mix | | 2+ | |
| 5 | 20 | Goats - Young Does | Boer X | Mix | | 1 | |

FILE COPY

FILE COPY

Initial DR  Date 4-22-15

FSA-2028 (11-12-14)                                                                                    Page 5 of 7

(e) All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title,
    payment intangibles, and general intangibles, including but not limited to the following:

All accounts, general intangibles, gross receipts, including co-op retains, equities and revolving funds derived from or related to the
debtor's farmland or farming activities additionally including but not limited to cooperative stock or certificates, base acres, accounts
receivable and proceeds from the Farm Service Agency (FSA) and Commodity Credit Corporation (CCC) programs and any and all
other present or future government farm programs, contracts or subsidies.

FILE COPY

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a) Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock
    are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from
    all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in
    favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other
    liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating
    plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b)  Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as
    stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan
    funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon
    from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)*
    insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured
    Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)*
    not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or
    permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured
    or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by
    this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information
    related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c) Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured
    by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs
    of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral
    or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this
    security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d) Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements
    and to file continuation statements.

(e) Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in
    Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may
    affect this security interest or its perfection; and any event of default.

(f) Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due,
    including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the
    account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g) All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by
    Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party
    shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any
    indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h)  In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further
    documents, including additional security instruments on such real and personal property as Secured Party may require and to
    take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to
    effectuate the rights granted to Secured Party herein.

Initial _BKM_ Date _4 22-15_

FSA-2028 (11-12-14)                                                                                          Page 6 of 7

**4. IT IS FURTHER AGREED THAT:**

(a)  Until default, Debtor may retain possession of the collateral.

(b)  **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

(1)  Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

(2)  Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

(3)  A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c)  Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d)  It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e)  Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f)  Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g)  This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h)  If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

(i)  The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

FILE COPY

Initial _____  Date _422-15_

(j)  If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k)  Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l)  **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

(m)  Debtor(s) acknowledge(s) that Secured Party loaned money to me/us to purchase items of collateral that serve as security for my/our loan, thereby, giving Secured Party a Purchase Money Security Interest in those items of collateral listed in Part 2. (c) or (d) with an asterisk*.

## 5.   CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. _____        6B. *(Date)* 4-22-15
     LAURIE RIDGEWAY

_____             *(Date)* 4-22-15
     BRANDON RIDGEWAY

NOTE:  *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.* **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

*The U.S. Department of Agriculture (USDA) prohibits discrimination against its customers, employees, and applicants for employment on the basis of race, color, national origin, age, disability, sex, gender identity, religion, reprisal, and where applicable, political beliefs, marital status, familial or parental status, sexual orientation, or all or part of an individual's income is derived from any public assistance program, or protected genetic information in employment or in any program or activity conducted or funded by the Department. (Not all prohibited bases will apply to all programs and/or employment activities.) Persons with disabilities, who wish to file a program complaint, write to the address below or if you require alternative means of communication for program information (e.g., Braille, large print, audiotape, etc.) please contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). Individuals who are deaf, hard of hearing, or have speech disabilities and wish to file either an EEO or program complaint, please contact USDA through the Federal Relay Service at (800) 877-8339 or (800) 845-6136 (in Spanish).*

*If you wish to file a Civil Rights program complaint of discrimination, complete the USDA Program Discrimination Complaint Form, found online at http: www.ascr.usda.gov complaint_filing_cust.html, or at any USDA office, or call (866) 632-9992 to request the form. You may also write a letter containing all of the information requested in the form. Send your completed complaint form or letter by mail to U.S. Department of Agriculture, Director, Office of Adjudication, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, by fax (202) 690-7442 or email at program.intake@usda.gov. USDA is an equal opportunity provider and employer.*

This form is available electronically.

Form Approved - OMB No. 0560-0237
(See Page 7 for Privacy Act and Paperwork Reduction Act Statements)

**FSA-2028**
(08-03-16)

Position 1

**U.S. DEPARTMENT OF AGRICULTURE**
Farm Service Agency

**SECURITY AGREEMENT**

**FILE COPY**

1. **THIS SECURITY AGREEMENT,** *dated (a)* ___February 16___ , 2017 _____ , is made between the
United States of America acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and (b)
**LAURIE RIDGEWAY, BRANDON RIDGEWAY**

(Debtor), whose mailing address is (c) 8314 HWY 140 E, KLAMATH FALLS, OR 97603-9420

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other
instruments, and in the future may incur additional indebtedness to Secured Party, which will also be evidenced by one or more
promissory notes or other instruments, all of which are called "Note," which have been executed by Debtor and which are payable
to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default
by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the
Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all
obligations and covenants contained in this Security Agreement.

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness
and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future
advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural
Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the
prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement;
and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any
supplementary agreement:

**MICROLOANS ONLY. DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described
collateral as indicated with (m). For the microloan collateral involving equipment and livestock, Secured Party acknowledges that it
is taking a security interest in the specifically listed equipment or livestock and all replacements or substitutions. For microloan
crop collateral, Secured Party acknowledges that it is taking a security interest in the specific crop, inventory, accounts and contract
rights, crop indemnity payments, all entitlements, benefits, and payments from State and Federal farm programs, and deposit
amounts arising out of the Debtor's operation or ownership of that crop. Any after-acquired provisions in this Security Agreement
do not apply to microloan collateral unless the loan is serviced pursuant to 7 C.F.R. part 766. PLEASE NOTE: This provision
shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein for all other
loans:

**ALL OTHER LOANS. DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described
collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter
(collateral); provided, however the following description of specific items of collateral shall not in any way limit the collateral
covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial _RBR_ Date 2/10/17

(b) All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and<br>Direction from Named Town or<br>Other Description |
|---|---|---|---|
| 4451 Brandon and Laurie Ridgeway | 12 | KLAMATH, OR | 8314 Highway 140 E., Klamath Falls, OR 97603 |

including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial _A.BR_ Date _2/16/17_

(c) All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)* _Oregon_

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Windrower | IH | 5000 | Good | | 13100590000700 |
| 2 | 1 | Baler | Freeman | 200T | Fair | 1976 | 202058 |
| 3 | 1 | Lawn Tractor | New Holland | M219H | Good | 2003 | T042D0080 |
| 4 | 1 | Tractor | Kioti | DK55 Cab 55hp 2wd | Good | 2016 | 16480001 |
| 5 | 1 | Loader | Kioti | 1595 | Good | | 0257716 |
| 6 | 1 | 40' Container | | 40' Insulated | Good | | |
| 7 | 1 | 1hp Compressor | | 1hp | Good | | |
| 8 | 1 | Hoophouse | | Aquaponic | Good | 2016 | |
| 9 | 1 | Rake | New Holland | 14' | Good | | |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial _____ Date 2/16/17 _____

United States v. Ridgeway et al, 1:18-cv-1665

Complaint

Exhibit D, Page 3 of 7

FSA-2028 (08-03-16)

(d) All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*

Oregon

| (2) Line No. | (3) Quantity | (4) Kind or Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Cattle - Brdg. - Heifers | Holstein | Black/White | | >2y | |
| 2 | 2 | Dairy Cattle - Dairy Heifers-Fat | X | Various | | >2y | |
| 3 | 1 | Dairy Cattle-Brdg. - Bulls | Holstein | Black/White | | 3y+ | |
| 4 | 3 | Dairy Cattle-Brdg. - Cows | Holstein | Black/White | | 3y+ | |
| 5 | 1 | Dairy Cattle-Brdg. - Cows | Jersey | Tan | | 3y+ | |
| 6 | 9 | Goats - Dairy | Nubian X | Various | | 2y+ | |
| 7 | 7 | Hogs - Feeders | X | Various | | >1y | |
| 8 | 1 | Hogs - Brdg. - Boars | Berkshire | Various | | 3y+ | |
| 9 | 6 | Hogs - Brdg. - Sows | Red Wattle | Red | | 2y+ | |
| 10 | 15 | Poultry - Chicken - Layers | Mix | Mix | | | |

Initial _____ Date 2/16/17

(e) All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

All payments, general intangibles, gross receipts, including co-op retains, equities and revolving funds derived form or related to the debtor's farmland or farming activities additionally including but not limited to cooperative stock or certificates, base acres, accounts receivable and proceeds from the Farm Service Agency (FSA) and Commodity Credit Corporation (CCC) programs and any and all other present of future government farm programs, contracts or subsidies.<?xml:namespace prefix = "o" ns = "urn:schemas-microsoft-com:office:office" />

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a) Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b) Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c) Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d) Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing Statements, and to file continuation statements.

(e) Debtor will immediately notify Secured Party of: any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f) Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g) All advances by Secured Party as described in this Security Agreement, together with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h) In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial ~~MR BK~~ Date 2/16/17

FSA-2028 (08-03-16)                                                                                   Page 6 of 7

**4. IT IS FURTHER AGREED THAT:**

(a) Until default, Debtor may retain possession of the collateral.

(b) **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 12 and 7 CFR Part 799, or any successor regulation. Upon any default:

    (1) Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

    (2) Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

    (3) A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c) Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d) It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e) Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f) Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g) This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h) If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

(i) The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

Initial ___ Date 2/6/17

FSA-2028 (08-03-16)                                                                                          Page 7 of 7

(j)  If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k)  Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l)  **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

(m)  Debtor(s) acknowledge(s) that Secured Party loaned money to me/us to purchase items of collateral that serve as security for my/our loan, thereby, giving Secured Party a Purchase Money Security Interest in those items of collateral listed in Part 2 with an asterisk*.

**5.  CERTIFICATION**

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A.                                                      6B. *(Date)*  2/16/17

LAURIE RIDGEWAY

                                                              *(Date)*  2-16-17

BRANDON RIDGEWAY

NOTE:  *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is 7 CFR Part 764, 7 CFR Part 765, 7 CFR Part 766, the Consolidated Farm and Rural Development Act (7 U.S.C. 1921 et seq.), and the Agricultural Act of 2014 (Pub. L. 113-79). The information will be used to establish the borrower's agreement to the terms and conditions for obtaining the requested FSA Farm Loan Programs benefits. The information collected on this form may be disclosed to other Federal, State, Local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and or as described in applicable Routine Uses identified in the System of Records Notice for USDA FSA-14, Applicant Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial of the requested FSA Farm Loan Programs benefits.*

*The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.* **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

In accordance with Federal civil rights law and U.S. Department of Agriculture (USDA) civil rights regulations and policies, the USDA, its Agencies, offices, and employees, and institutions participating in or administering USDA programs are prohibited from discriminating based on race, color, national origin, religion, sex, gender identity (including gender expression), sexual orientation, disability, age, marital status, family/parental status, income derived from a public assistance program, political beliefs, or reprisal or retaliation for prior civil rights activity, in any program or activity conducted or funded by USDA (not all bases apply to all programs). Remedies and complaint filing deadlines vary by program or incident.

Persons with disabilities who require alternative means of communication for program information (e.g., Braille, large print, audiotape, American Sign Language, etc.) should contact the responsible Agency or USDA's TARGET Center at (202) 720-2600 (voice and TTY) or contact USDA through the Federal Relay Service at (800) 877-8339. Additionally, program information may be made available in languages other than English.

To file a program discrimination complaint, complete the USDA Program Discrimination Complaint Form, AD-3027, found online at http://www.ascr.usda.gov/complaint_filing_cust.html and at any USDA office or write a letter addressed to USDA and provide in the letter all of the information requested in the form. To request a copy of the complaint form, call (866) 632-9992. Submit your completed form or letter to USDA by: (1) Mail: U.S. Department of Agriculture Office of the Assistant Secretary for Civil Rights 1400 Independence Avenue, SW Washington, D.C. 20250-9410; (2) Fax: (202) 690-7442; or (3) email: program.intake@usda.gov.

RIDGEWAY, BRANDON RO

OR Sec of State
04/21/2015

Lien #: 90427131

90427131_5935709

UCC

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Rowena A. Chase    (541) 883-6924 Ext. 108

**B. E-MAIL CONTACT AT FILER [optional]**
rowena.chase@or.usda.gov

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

USDA/Farm Service Agency
2316 S 6th Street
Suite C
Klamath Falls, OR  97601

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME – Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| RIDGEWAY | BRANDON | ROY | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 8314 Hwy 140 East | Klamath Falls | OR | 97603 | USA |

2. DEBTOR'S NAME – Provide only one debtor name (2a or 2b) (use exact, full name; do not omit, modify or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| RIDGEWAY | LAURIE | JEAN | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 8314 Hwy 140 East | Klamath Falls | OR | 97603 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME UNITED STATES OF AMERICA acting through FARM SERVICE AGENCY | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2316 S 6th Street, Suite C | Klamath Falls | OR | 97601 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

a.  All crops, livestock, farm products, equipment, certificates of title, goods, supplies, inventory, accounts, deposit accounts, supporting obligations, contract rights, payment intangibles, general intangibles, investment property, gross receipts, equities, revolving funds, crop insurance indemnity payments, and all entitlements, benefits, and payments from all State and Federal farm programs.
b._____ ; and
c. All proceeds, products, accessions, and security acquired hereafter.

Disposition of such collateral is NOT hereby authorized

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6. Check only if applicable and check only one box:
☐ Public-Finance Transaction    ☐ A Debtor is a Transmitting Utility

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA
USDA/FSA by:  ROWENA A. CHASE, FLP Tech

401 FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (OR REV. 08/13)

USE THIS FORM TO <u>ADD</u> NAMES ONLY
(DO NOT USE FOR CHANGES, DELETIONS, OR ASSIGNMENTS)

**UCC FINANCING STATEMENT ADDITIONAL PARTY**
FOLLOW INSTRUCTIONS

| 18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because individual Debtor name did not fit, check here ☐ | |
|---|---|
| 18a. ORGANIZATION'S NAME | |
| OR 18b. INDIVIDUAL'S SURNAME **RIDGEWAY** | |
| FIRST PERSONAL NAME **BRANDON** | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME - Provide only <u>one</u> Debtor name (19a or 19b) - (use exact full name: do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 19b. INDIVIDUAL'S SURNAME **RIDGEWAY** | FIRST PERSONAL NAME **BRANDON** | ADDITIONAL NAME(S)/INITIAL(S) **R** | SUFFIX |
| 19c. MAILING ADDRESS **8314 HWY 140 EAST** | CITY **KLAMATH FALLS** | STATE **OR** | POSTAL CODE **97603** | COUNTRY **USA** |

20. ADDITIONAL DEBTOR'S NAME - Provide only <u>one</u> Debtor name (20a or 20b) - (use exact full name: do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 20b. INDIVIDUAL'S SURNAME **RIDGEWAY** | FIRST PERSONAL NAME **BRANDON** | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 20c. MAILING ADDRESS **8314 HWY 140 EAST** | CITY **KLAMATH FALLS** | STATE **OR** | POSTAL CODE **97603** | COUNTRY **USA** |

21. ADDITIONAL DEBTOR'S NAME - Provide only <u>one</u> Debtor name (21a or 21b) - (use exact full name: do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 21b. INDIVIDUAL'S SURNAME **RIDGEWAY** | FIRST PERSONAL NAME **LAURIE** | ADDITIONAL NAME(S)/INITIAL(S) **J** | SUFFIX |
| 21c. MAILING ADDRESS **8314 HWY 140 EAST** | CITY **KLAMATH FALLS** | STATE **OR** | POSTAL CODE **97603** | COUNTRY **USA** |

22. ☐ ADDITIONAL SECURED PARTY'S NAME <u>or</u> ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only <u>one</u> name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 22b. INDIVIDUAL'S SURNAME **RDIGEWAY** | FIRST PERSONAL NAME **LAURIE** | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 22c. MAILING ADDRESS **8413 HWY 140 EAST** | CITY **KLAMATH FALLS** | STATE **OR** | POSTAL CODE **97603** | COUNTRY **USA** |

23. ☐ ADDITIONAL SECURED PARTY'S NAME <u>or</u> ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only <u>one</u> name (22a or 22b)

| 23a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

24. MISCELLANEOUS:

United States v. Ridgeway et al,
1:18-cv-1665                    Complaint                    Exhibit E, Page 2 of 2



**EFS-1**

STATE OF OREGON
Corporation Division - UC(
255 Capitol St. NE, Suite 1
Salem, OR 97310-1327
(503)986-2200 Fax (503)373-
http://www.FilingInOregon.c

Lien#: 90427275

RIDGEWAY, BRANDON RO                    OR Sec of State
                                        04/21/2015



90427275_5935730

EFS

## Farm Products Financing Statement Standard Form

PLEASE TYPE OR PRINT LEGIBLY. READ INSTRUCTIONS BEFORE FILLING OUT FORM.

This FARM PRODUCT EFFECTIVE FINANCING STATEMENT is presented to the filing officer pursuant to ORS Chapter 80.100 to 80.130. This statement remains effective for a period of five years from the date of filing, subject to extensions for additional periods as provided for by ORS Chapter 80.115 (3).

**A. NAME(S) OF PERSON(S) SUBJECTING FARM PRODUCTS TO THE SECURITY INTEREST**

Mark One:
If Individual, list last name first.

1. Brandon Roy Ridgeway          ☐ - Business  ☒ - Individual

2. Laurie Jean Ridgeway          ☐ - Business  ☒ - Individual

3. Brandon R. Ridgeway           ☐ - Business  ☒ - Individual

MAILING ADDRESS

1. 8314 Hwy 140 East

2. Klamath Falls, OR  97603

3.

**B. SECURED PARTY NAME(S) AND ADDRESS(ES)**

1. UNITED STATES OF AMERICA acting through FARM SERVICE AGENCY

2. 2316 S 6th Street, Suite C

3. Klamath Falls, OR  97601

| C. FARM PRODUCT CODE | COUNTY CODE | CROP YEAR (If applicable) | AMOUNT (If applicable) |
|---|---|---|---|
| 0201 | 18 | ALL | ALL |
| 0204 | 18 | ALL | ALL |
| 0803 | 18 | ALL | ALL |
| 1001 | 18 | ALL | ALL |
| 1002 | 18 | ALL | ALL |
| 1102 | 18 | ALL | ALL |

Debtor

The requirement that a document be signed, authorized or otherwise authenticated by the debtor is satisfied if the debtor has executed a security agreement against a security interest in the farm products to the secured party ORS Chapter 80.115 (7).

RETURN TO:

USDA/KLAMAT COUNTY FSA

2316 S 6th Street, Suite C

Klamath Falls, OR  97601

**FEES**

Make check for $15.00 payable to "Corporation Division"

Note: Filing fees may be paid with VISA, MasterCard, American Express or Discover card. The card number and expiration date should be submitted on a separate sheet of paper for your protection.

DO NOT SUBMIT DUPLICATES OF THIS FILING OR ITS ATTACHMENTS

EFS-1 Farm Products Financing Statement (03/14)

Continuation and becomes a part of EFS-1, RIDGEWAY, Brandon and Laurie;

A.NAMES(S) OF PERSON(S) SUBJECTING FARM PRODUCTS TO THE SECURITY INTEREST

| | | |
|---|---|---|
| RIDGEWAY, BRANDON R. | | [X] Individual |
| RIDGEWAY, BRANDON | | [X] Individual |
| RIDGEWAY, LAURIE J. | | [X] Individual |
| RIDGEWAY, LAURIE | | [X] Individual |

| C. FARM PRODUCT CODE | COUNTY CODE | CROP YEAR | AMOUNT |
|---|---|---|---|
| 0806 | 18 | ALL | ALL |
| 0807 | 18 | ALL | ALL |
| 0816 | 18 | ALL | ALL |
| 0826 | 18 | ALL | ALL |
| 0827 | 18 | ALL | ALL |
| 1006 | 18 | ALL | ALL |
| 1104 | 18 | ALL | ALL |
| 1106 | 18 | ALL | ALL |
| 1201 | 18 | ALL | ALL |

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

## DEFENDANTS

BRANDON ROY RIDGEWAY AND LAURIE JEAN RIDGEWAY, Husband and Wife

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Klamath
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kathleen L. Bickers AUSA
United States Attorney's Office, District of Oregon
1000 SW Third Ave., Suite 600, Portland, OR 97204, 503-727-1060

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | of Property 21 USC 881 | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 690 Other | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 710 Fair Labor Standards | ☐ 896 Arbitration |
| ☒ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Act | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | ☐ 720 Labor/Management | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | Relations | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | ☐ 740 Railway Labor Act | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | ☐ 751 Family and Medical | State Statutes |
| | Employment | **Other:** | Leave Act | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 790 Other Labor Litigation | |
| | Other | ☐ 550 Civil Rights | ☐ 791 Employee Retirement | |
| | ☐ 448 Education | ☐ 555 Prison Condition | Income Security Act | |
| | | ☐ 560 Civil Detainee - | **FEDERAL TAX SUITS** | |
| | | Conditions of | ☐ 870 Taxes (U.S. Plaintiff | |
| | | Confinement | or Defendant) | |
| | | | ☐ 871 IRS—Third Party | |
| | | **IMMIGRATION** | 26 USC 7609 | |
| | | ☐ 462 Naturalization Application | | |
| | | ☐ 465 Other Immigration | | |
| | | Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
Another District
*(specify)*

☐ 6   Multidistrict
Litigation -
Transfer

☐ 8   Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1345
Brief description of cause:
Real estate mortgage foreclosure

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
56,199.49

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE
09/14/2018

SIGNATURE OF ATTORNEY OF RECORD
/s Kathleen L. Bickers, OSB # 85151

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____